# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE

IN RE: )
**TIMOTHY LEE BARBUTES** ) Case No. 10-05176
**LOUISE KAREN BARBUTES** ) Chapter 13
    Debtors. ) Judge Marian F. Harrison
     Judge George C. Paine, II (by interchange)

## MEMORANDUM

This matter is before the court on confirmation of Timothy Lee and Louise Karen Barbutes ("debtors") proposed chapter 13 plan. Henry E. Hildebrand, Standing Chapter 13 Trustee for the United States Bankruptcy Court for the Middle District of Tennessee ("Trustee") objected that the debtors' plan fails contribute all disposable income as required by 11 U.S.C. § 1325(b). More specifically, the trustee objects that these over-median income debtors' expenses on their Form B22C result in a failure to contribute all of the debtors' "projected disposable income" to unsecured creditors. For the reasons cited herein, the court SUSTAINS IN PART and OVERRULES IN PART the trustee's objections.

The debtors filed a chapter 13 voluntary petition, accompanied by their Statements and Schedules on May 14, 2010. On July 27, 2010, the debtors filed an Amended Chapter 13 plan to pay a base of $146,371.00 over 60 months and no less than $0.60 on the dollar to unsecured creditors. Shortly after, the debtors filed an Amended Schedule J and an amended Form B22C. Schedule J shows current

expenditures, as of confirmation, of $4,582.79.  In Amended Form B22C, the debtors list $7,884.83 in total "current monthly income" and total "adjustments to disposable income" of $8,574.95 leaving ($-690.12) in monthly disposable income for purposes of § 1325(b)(2).

The chapter 13 trustee objected to confirmation pursuant to 11 U.S.C. § 1325(b).  That section provides, in relevant part:

> (b) (1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan-
>
> …
>
> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.
>
> (2) For the purposes of this subsection, the term "disposable income" means current monthly income received by the debtor … less amounts reasonably necessary to be expended-
>
> (A) (i) for the maintenance or support of the debtor or a dependent of the debtor …
>
> (B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.
>
> (3) Amounts reasonably necessary to be expended under paragraph (2) … shall be determined in accordance with subparagraph (A) and (B) of section 707(b)(2), if the debtor has a current monthly income, when multiplied by 12, greater than-
>
> …
>
> (B) in the case of a debtor in a household of

> 2, 3, or 4 individuals, the highest median
> income of the applicable State for a family of
> the same number....

11 U.S.C. § 1325(b). The trustee's objection to confirmation as articulated at trial is:

> based on the disposable income and it is based on the expenses that are disclosed on the 22C. Mr. Fox has taken an number of expenses that are in excess of the expenses that are permitted on 707(b)(3) and (b)(2). The unsecured pool as I have calculated it would require a dividend of 100 cents on the dollar.
> . . .
> The relevant factors are, your Honor, that the debtors' gross income on the Schedule I, I should say gross income, but net business income, is $9,499.17. The expenses as permitted on the 22C without claiming the additional adjustments is $7,736.38 which results in a net monthly income of $1,762. . . which . . . would pay everyone in full.

The trustee objects that some of the "additional adjustments" taken on the debtors' B22C are unjustified. Without the adjustments, the trustee contends that these debtors could propose nearly a 100% plan. The debtors, however, argue that they presented proof as to the "reasonable and necessary" additional adjustments on the their B22C that allow the 60% plan to be confirmed in accordance with 11 U.S.C. § 1325(b).

The Barbutes are typical American debtors. Although above median income, their financial scenario is characteristic of many debtors, Mr. Barbutes is a family man, with two grown daughters. He is working two jobs– a corporate pilot during the week, and a flight instructor on weekends. Mrs. Barbutes, who suffers from chronic back pain, is working full time as a dental hygienist to support their family.

The Barbutes' twenty-four year old daughter and her husband, a Navy veteran disabled during service, are living with the debtors while their son-in-law recovers

and seeks employment. Their daughter has an entry level, commission-based job that is not enough to support their daughter and her disabled husband. The Barbutes' home is fully encumbered and they own two older vehicles nearing the end of their useful life. Most of their debt is from credit cards, and a loan the Barbutes incurred to give to one of their daughters to start a restaurant business. When the restaurant failed, their daughter was unable to repay the loan, and the Barbutes filed bankruptcy to try to restructure and repay their debts.

From Mr. Barbutes testimony at confirmation, it was clear to the court that this couple "fell into" bankruptcy after borrowing money to help their daughter get started in business, but have otherwise attempted to maintain financial order and repay their creditors. It is the "all-American" scenario of being just one paycheck away from financial disaster, and therefore needing bankruptcy relief.

The trustee argues that the additional expense items that the debtors claim to offset their income artificially deflate the amount of disposable income available for the Barbutes to repay their creditors. By the trustee's calculations, the debtors have $9,499.17 in monthly income, and the debtors' monthly expenses are $7,775.45 making net monthly income $1,073.72 . Over 60 months, the plan would pay unsecured creditors, after administrative costs, approximately a 98% return.

The specific additional adjustments at issue on the Official Form B22C are:

| Line 26 | **Local Standards: housing and utilities; adjustment.** If you contend that the process set out in Lines 25A and 25B does not accurately compute the allowance to which you are entitled under the IRS Housing and Utilities Standards, enter any additional amount to which you contend you are entitled, and state the basis for your contention in the space below:<br><br>**Home has special maintenance needs and high utilities** | $624.11 | The court overrules the trustee's objection for the reasons stated below. |
|---|---|---|---|
| Line 55 | **Qualified retirement deductions.** Enter the monthly total of (a) all amounts withheld by your employer from wages as contributions for qualified retirement plans, as specified in § 541(b)(7) and (b) all required repayments of loans from retirement plans, as specified in § 362(b)(19). | $142.48 | The court overrules the trustee's objection for the reasons stated below. |
| Line 57 | **Deduction for special circumstances.** If there are special circumstances that justify additional expenses for which there is no reasonable alternative, describe the special circumstances and the resulting expenses in lines a-c below. If necessary, list additional entries on a separate page. Total the expenses and enter the total in Line 57. **You must provide your case trustee with documentation of these expenses and you must provide a detailed explanation of the special circumstances that make such expense necessary and reasonable.**<br><br>**Gym Membership for Health of Debtors; Debtor is a pilot and must be in good physical condition.** | $65 | The court overrules the trustee's objection for the reasons stated below. |
| Line 60 | **Other Expenses.** List and describe any monthly expenses, not otherwise stated in this form, that are required for the health and welfare of you and your family and that you contend should be an additional deduction from your current monthly income under § 707(b)(2)(A)(ii)(I). If necessary, list additional sources on a separate page. All figures should reflect your average monthly expense for each item. Total the expenses.<br><br>**Pool upkeep** | $59.59 | The court overrules the trustee's objection for the reasons stated below. |

### A.   Line 26 Home Maintenance and High Utilities

The debtors claim $624.11 in additional expenses to maintain their home and pay their higher utilities.  Congress has incorporated into § 707(b)(2)(A) several

instances in which the court may allow amounts in excess of the IRS standards or make additional allowances if properly documented and proven to be reasonable and necessary. **See, e.g.**, § 707(b)(2)(A)(ii)(I) (additional allowance of 5% for food and clothing); § 707(b)(2)(A)(ii)(II) (continuation of expenses for support of certain elderly, ill or disabled persons); § 707(b)(2)(A)(ii)(V) (additional allowance for home energy costs). Section 707(b)(2)(A)(ii)(V) specifically states:

> (V) In addition, the debtor's monthly expenses may include an allowance for housing and utilities, in excess of the allowance specified by the Local Standards for housing and utilities issued by the Internal Revenue Service, based on the actual expenses for home energy costs if the debtor provides documentation of such actual expenses and demonstrates that such actual expenses are reasonable and necessary.

The trustee contends, and Mr. Barbutes' testimony verified, that the majority of the $624.11 adjustment constitutes "maintenance" expenses, as opposed to high utilities, for the debtors' home. The problem, the trustee argues, is that the special exception for § 707(b)(2)(A)(ii)(V) is not for maintenance of the home, but is for documented home energy costs. Subsection (V) allows for additional housing and utilities expenses when it is based on "actual expenses for home energy costs." By Mr. Barbutes' own proof, of the $624.11 sought as an adjustment, $169.61 is attributable to utilities, and the remaining $454.50 is for home maintenance.

The court agrees with the trustee that the plain meaning of § 707(b)(2)(A)(ii) allows an adjustment due to documented home energy costs, but does not allow home maintenance expenses. The court also finds that the $169.61 sought as an additional adjustment for utilities was exhaustively documented by the debtors, and Mr. Barbutes' credible testimony established the reasonableness and necessity of that additional expense. Thus, the court allows the $169.61 as reasonable and necessary, properly documented home energy costs, but disallows the adjustment of $454.50 for home maintenance under § 707(b)(2)(A)(ii)(V).

The debtors might also argue that their actual expenses in excess of the amounts specified in § 707(b)(2)(A) should be allowed if they can meet the substantive and procedural requirements of demonstrating special circumstances as permitted by § 707(b)(2)(B). Section 707(b)(2)(B) of the Bankruptcy Code, which provides in pertinent part as follows:

> (i) In any proceeding brought under this subsection, the presumption of abuse may only be rebutted by demonstrating special circumstances, such as a serious medical condition or a call to active duty in the Armed Forces, to the extent that special circumstances justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative.
>
> (ii) In order to establish special circumstances, the debtor shall be required to itemize each additional expense or adjustment of income and to provide (I) documentation for such expense or adjustment to income; and (II) a detailed explanation of the special circumstances that make such expenses or adjustment to income necessary and reasonable.
>
> (iii) The debtor shall attest under oath to the accuracy of any information provided to demonstrate that additional expenses or adjustments to income are required.

11 U.S.C. § 707(b)(2)(B).[1]  Section 707(b)(2)(B) sets forth both procedural and

---

[1] The United States Supreme Court in **Hamilton v. Lanning**, ___ U.S. ___, 130 S.Ct. 2464 (June 7, 2010) allowed bankruptcy courts to account for changes in debtor's income that are "known or virtually certain at the time of confirmation." The Supreme Court specifically held:

> Respondent, who favors the forward-looking approach, agrees that the method outlined by petitioner should be determinative in most cases, but she argues that in exceptional cases, where significant changes in a debtor's financial circumstances are known or virtually certain, a bankruptcy court has discretion to make an appropriate adjustment. Respondent has the stronger argument.
>
> . . .
>
> We decline to infer from § 1325's incorporation of § 707 that Congress intended to eliminate, *sub silentio*, the discretion that courts previously exercised when projecting disposable income to account for known or virtually certain changes.

7-U.S. Bankruptcy Court, M.D. Tenn.

substantive requirements. The court finds the procedural requirements were met as the home maintenance expenses, were earnestly and comprehensively documented, and testified to under oath by Mr. Barbutes.

The Bankruptcy Court for the Northern District of Ohio, Judge Speer, wrote an excellent analysis of what "special circumstances" section 707(b)(2)(ii) requires:

> The Bankruptcy Code does not specifically define what constitutes a "special circumstance" as applied to § 707(b)(2)(B)(i). This provision, however, does provide two examples: (1) a serious medical condition; or (2) a call to active duty in the Armed Forces. Although these conditions are not exclusive, this Court-applying the statutory interpretation canon of ejusdem generis, meaning literally "of the same kind,"-has found that a condition giving rise to a "special circumstance" should be similar in nature and have characteristics similar to the examples provided in § 707(b)(2)(B)(i). **In re Castle**, 362 B.R. 846, 851 (Bankr. N.D. Ohio 2006). To this end, this Court has observed that the examples in § 707(b)(2)(B)(i) "do show a commonality [in that] they both constitute situations which not only put a strain on a debtor's household budget, but they arise from circumstances normally beyond the debtor's control. **Id**.

---

The **Lanning** analysis is equally applicable to plans where the expenses used in calculating "projected disposable income" deviate from those calculated as of the date of filing under § 707(b)(2), as reported on Form B22C. Part of the calculation of projected disposable income is consideration of expenses. The Supreme Court's extension of discretion in **Lanning** only makes sense if the same discretion extends to expenses as well. As to expenses, a:

> court's discretion in deviating from Form B22C is significantly constrained because § 1325(b)(3) incorporates § 707(b)(2), thereby requiring use of the IRS national and local standard expenses for some items. Section 1325(b)(3) when defining "amounts reasonably necessary to be expended" by above median debtors refers to § 707(b). It therefore incorporates not only § 707(b)(2)(A), which defines debtor's monthly expenses, but also § 707(b)(2)(B), which allows a debtor to rebut the presumption of abuse which would otherwise arise by showing special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative. Therefore, for purposes of confirmation, the court, in addition to the discretion identified in **Lanning,** also may approve adjustments based upon special circumstances, if properly supported, which could have been offered to rebut abuse.

**In re Melvin,** 411 B.R. 715 (Bankr. D. Kan. 2008) (relying 10th Circuit's **Lanning** decision before United States Supreme Court granted *cert*. on Nov. 2, 2009).

8-U.S. Bankruptcy Court, M.D. Tenn.

This is in line with jurisprudence formulated by the Sixth Circuit Court of Appeals. In the case of **In re Krohn**, the Sixth Circuit, when addressing the propriety of dismissing a case under § 707(b), observed that a bankruptcy court should consider whether the debtor "was forced into Chapter 7 by unforeseen or catastrophic events." 886 F.2d 123, 126 (6th Cir.1989). **See also In re Haman**, 366 B.R. 307, 314 (Bankr. D. Del.2007) (expenses incurred merely at debtor's discretion are not a 'special circumstances; rather, there should exist no reasonable alternative but to incur the expense).

Notwithstanding, nothing in § 707(b)(2)(B)(i) absolutely requires that a 'special circumstance' arise as the result of an event beyond the debtor's reasonable control. Thus, the Court will not read into § 707(b)(2)(B)(i) an involuntariness prerequisite. At the very least, however, it may be safely stated that a debtor who requests a finding of "special circumstances" seeks preferential treatment over other similarly situated debtors. **In re Stocker**, 399 B.R. 522, 531-32 (Bankr. M.D. Fla. 2008), citing S.Rep. No. 106-49, at 6-7 (1999).

Thus, it follows that, where the circumstances are not involuntary, the "special circumstances" contemplated by § 707(b)(2)(B)(i) must be highly unusual, and of the type not normally encountered by most debtors. As stated by one bankruptcy court:

> Both a reading of the plain unambiguous language of 11 U.S.C. Section 707(b)(2)(B) and the BAPCPA legislative history lead to the same result: A debtor asserting "special circumstances" in support of additional expenses or income adjustment must establish the circumstances are extraordinary or exceptional, are unexpected or involuntary, and place the debtor in dire need of Chapter 7 relief.

**In re Stocker**, 399 BR. at 532. In the end, however, any inquiry concerning the existence of 'special circumstances' is ultimately dependent on the particular facts of each debtor's situation, and thus must be conducted on a case-by-case basis. **See, e.g., In re Vaccariello**, 375 B.R. 809, 813; **In re Siler**, 426 B.R. 167, 172-173 (Bankr. W.D.N.C. 2010); **In re Champagne**, 389 B.R. 191, 200 (Bankr. D.Kan. 2008).

**In re Conlee**, 2010 WL 3210974 (Bankr. N.D. Ohio, Aug. 11, 2010). Under the specific facts of this case, the court finds there are special circumstances that justify the debtors' additional expenses of home maintenance. These debtors are working full time; Mrs. Barbutes is working full time as a dental hygienist despite her chronic back pain that was caused by her job and continues to exacerbate that condition. Mr. Barbutes is working two jobs. They are providing housing, as any parent would

do, for their daughter and Navy veteran, disabled son-in-law while they get on their feet. The debtors have exhaustively reviewed their finances and accounted for expenses. Their, house, built in the 1970's has declined and requires some serious, and very well-documented, maintenance expenses in order to provide basic shelter for the debtors (and their daughter and son-in-law).

The trustee suggests their "reasonable alternative" is different housing. The court disagrees. In this deflated real estate market, the debtors hold a fully encumbered property with significant deferred maintenance. The more than twenty year old house in need of substantial repairs would be difficult to sell other than at a loss. In a difficult ownership market, rental rates may not provide these debtors with any relief, and the sale of the house would create more debt. The court finds that the veracity of Mr. Barbutes' testimony, his extensive documentation of the additional adjustments, and the uniqueness of these debtors' situation allows the $454.50 expense adjustment for home maintenance as a special circumstance pursuant to § 707(b)(2)(B)(i).

### B. Qualified Retirement Deductions

The debtors also seek as an allowed expense the $142.39 monthly contribution to Mr. Barbutes' Roth Individual Retirement Account as listed on Line 55 of Form 22C:

> Enter the monthly total of (a) all amounts withheld by your employer from wages as contributions for qualified retirement plans, as specified in § 541(b)(7) and (b) all required repayments of loans from retirement plans, as specified in § 362(b)(19).

Section 541(b)(7) provides:

(b) Property of the estate does not include—

. . .

(7) any amount—

    (A) withheld by an employer from the wages of employees for payment as contributions—

        (i) to—

        (I) an employee benefit plan that is subject to title I of the Employee Retirement Income Security Act of 1974 or under an employee benefit plan which is a governmental plan under section 414(d) of the Internal Revenue Code of 1986;

        (II) a deferred compensation plan under section 457 of the Internal Revenue Code of 1986; or

        (III) a tax-deferred annuity under section 403(b) of the Internal Revenue Code of 1986;

        except that such amount under this subparagraph shall not constitute disposable income as defined in section 1325(b)(2); or

        (ii) to a health insurance plan regulated by State law whether or not subject to such title; or

    (B) received by an employer from employees for payment as contributions—

        (i) to—

        (I) an employee benefit plan that is subject to title I of the Employee Retirement Income Security Act of 1974 or under an employee benefit plan which is a governmental plan under section 414(d) of the Internal Revenue Code of 1986;

        (II) a deferred compensation plan under section 457 of the Internal Revenue Code of 1986; or

        (III) a tax-deferred annuity under section 403(b) of the Internal Revenue Code of 1986;

        except that such amount under this subparagraph shall not constitute disposable

> income, as defined in section 1325(b)(2); or
>
> (ii) to a health insurance plan regulated by State law whether or not subject to such title;

The debtors seek to deduct the expense of the voluntary contribution of a portion of Mr. Barbutes' paycheck to a "Roth IRA" in the amount of $142.48. Mr. Barbutes' Roth IRA appears to be what is known colloquially as a "Sidecar IRA." According to the Internal Revenue Service Publication 590 (for use in preparing 2009 returns):

> **DEEMED IRAs:** A qualified employer plan (retirement plan) can maintain a separate account or annuity under the plan (a deemed IRA) to receive voluntary employee contributions. If the separate account or annuity otherwise meets the requirements of an IRA, it will be subject only to the IRA rules. An employee's account can be treated as a traditional IRA or a Roth IRA.

Thus, even if the employer maintains a qualified retirement plan under section 401(a), 403(b) or 457 of the Internal Revenue Code, an employee can nonetheless elect to make further voluntary contributions through an employer to an IRA that will be treated by the IRS as the employee's IRA account. Section 541(b)(7) excludes from "property of the estate" only those specific employer benefit plans listed in the statute, and unfortunately for the debtors does not include their voluntary Roth IRA contributions.

While the court cannot allow the deduction as a qualified retirement plan, it can allow the IRA contributions as a "special circumstance" pursuant to § 707(b)(2)(ii). Mr. Barbutes is 52 years old and has a limited amount of years he is employable in his profession as a pilot. Mrs. Barbutes already suffers from chronic back pain as a result of her work as a hygienist and is also likely limited in her employment life span. Today's America, which promotes not relying solely on Social Security requires some retirement savings. For these debtors, the court finds the Roth IRA contributions are allowed as a special circumstance for which there is no

12-U.S. Bankruptcy Court, M.D. Tenn.

Case 3:10-bk-05176    Doc 39    Filed 09/08/10    Entered 09/08/10 15:15:15    Desc Main
Document      Page 12 of 17

reasonable alternative.[2]

### C. **Deductions for Pool Upkeep and Gym Membership**

The debtors have sought allowance of $59.59 for pool upkeep and $65 for a monthly gym membership. but the court cannot find that the gym is a "special circumstance" for which there is no reasonable alternative. The pool upkeep is listed on Line 60 of Form 22C as a § 707(b)(2)(A)(ii)(I) expense. Section 707(b)(2)(A)(ii) provides debtors with an extensive list of expenses, allocated into five broad categories that a debtor may deduct from current monthly income:

> (1) The first category is National and Local Standards that are issued by the Internal Revenue Service and are calculated to correspond to a debtor's location and family size. This also includes "Other Necessary Expenses." These expenses are also issued by the Internal Revenue Service but differ from the National and Local Standards in that they cover a larger, more varied, pool of expense types.
>
> (2) The second category of expenses allows debtors to claim, if applicable, expenses related to the care of family members.
>
> (3) The third category of expenses allows debtors to claim, if the debtor is eligible for Chapter 13, administrative expenses incurred for administering a Chapter 13 plan.
>
> (4) The fourth category of expenses allows debtors to claim, if justified, expenses incurred to send children, under the age of 18, to private or public elementary or secondary schools.
>
> (5) The fifth category of expenses allows debtors to claim expenses incurred for home energy costs in excess of the amount prescribed by the Internal Revenue Service standards found in category one of the section.

**See In re Williams**, 424 B.R. 207, 211-212 (Bankr. W.D.Va., 2010) (listing § 11

---

[2] Although 65 is not a mandatory retirement age for Mr. Barbutes as a non-commercial pilot, an employer's likely hiring of Mr. Barbutes past 65 or close to is greatly decreased. To give these honest, but unfortunate debtors a meaningful fresh start they must have some retirement to rely upon. Their circumstances prove they have a limited time to build any retirement and therefore are a special circumstance.

U.S.C. § 707(b)(2)(A)(ii)'s provisions). The pool upkeep falls under § 707(b)(2)(A)(ii)(II):

> In addition, the debtor's monthly expenses may include, if applicable, the continuation of actual expenses paid by the debtor that are reasonable and necessary for care and support of an elderly, chronically ill, or disabled household member or member of the debtor's immediate family (including parents, grandparents, siblings, children, and grandchildren of the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case who is not a dependent) and who is unable to pay for such reasonable and necessary expenses.

11 U.S.C. § 707(b)(2)(A)(ii)(II). **In re Hicks**, 370 B.R. 919 (Bankr. E.D.Mo. 2007) holds that the elements of § 707(b)(2)(A)(ii)(II) are as follows:

(1) The expenses must be a continuation of actual expenses paid by the Debtor; and

(2) The expenses must be reasonable and necessary for care of an elderly, chronically ill, or disabled:

(a) Household member who is unable to pay for such expenses; or

(b) Member of the Debtor's immediate family (as defined by the statute) who is unable to pay for such expenses.

Mr. Barbutes testified that his wife's chronic back problems necessitated upkeep of the pool for her continued therapy. Supporting that testimony, the debtors entered into evidence Chiropractor Michelle Carrier's written statement that "use of a hot tub would be beneficial." Also submitted was a letter from Fox Pool & Spas Chief Operations Manager David Gray stating the draining the debtors' pool instead of maintaining it would most likely damage the vinyl pool liner. Mr. Barbutes' testimony was credible and uncontroverted as to both the necessity of the pool upkeep and the use of the pool to treat Mrs. Barbutes' chronic back problems. Even if the court were not inclined to allow this expense as a § 707(b)(2)(A)(ii)(II) expense, the court would nonetheless allow this expense as part of the "special circumstances" maintenance expense allowed above. The pool is part of the real

14-U.S. Bankruptcy Court, M.D. Tenn.

Case 3:10-bk-05176    Doc 39    Filed 09/08/10    Entered 09/08/10 15:15:15    Desc Main
Document      Page 14 of 17

property and failing to maintain the pool would only further devalue the real property and defeat allowing the deferred maintenance that is needed on this house.[3]

Line 57 of the 22C lists the debtors $65 per month expense for a gym membership as a "special circumstance" expense. Mr. Barbutes provided credible testimony as to the need for the gym membership to keep he and his wife physically sound to continue full employment. The court disagrees that this is a "special circumstance" expense, but does find, like the pool upkeep, that the gym membership is a § 707(b)(2)(A)(ii)(II) medical expense paid by the debtor for the reasonable and necessary care of the debtors. Mr. Barbutes must maintain excellent physical health for his position as a pilot, and Mrs. Barbutes needs to exercise to keep her back healthy for her employment. Accordingly, the court OVERRULES the trustee's objection to the debtors' pool and gym expenses.

### D. Tax Refunds

The trustee questioned why the debtors had not committed their future tax refunds to help fund the plan. The rule in the Sixth Circuit is somewhat confusing. In **Freeman v. Schulman (In re Freeman)**, 86 F.3d 478 (6th Cir. 1996), the Sixth Circuit Court of Appeals held:

---

[3] The court notes that these debtors are "model debtors" on so many different levels. They had to file bankruptcy after borrowing money to help their children get started in a business (that eventually failed). They are earning to their potential; Mrs. Barbutes is working full time, and Mr. Barbutes is working two jobs. The debtors are attempting to repay their creditors in chapter 13, an approximate 60% plan. They are helping their Navy veteran, disabled son-in-law and daughter while struggling themselves financially. Furthermore, it is clear to the court that Mr. Barbutes painstakingly prepared documentary evidence to support his testimony and all additional expenses sought. There was absolute candor in his testimony and his documentary evidence was meticulously prepared and organized.

15-U.S. Bankruptcy Court, M.D. Tenn.

> The plain language of [§ 1325] makes no express or implied reference to the exempt status of income under state law. . . . "Disposable income" under section 1325 is to be interpreted broadly . . . . In this case, as a factual matter, the debtor had specifically identified that tax refunds should go to the plan and made no argument that the funds were needed for "maintenance and support" of the debtor or her dependents. The income therefore qualifies as "projected disposable income" under section 1325.

**Id.** at 480-81. This holding seemingly mandates that tax refunds be contributed to the plan, but later in the opinion, the court holds that:

> Situations may arise where a debtor did not specifically list tax refunds for inclusion in the plan and those situations would need to be examined on a case-by-case basis to decide whether a tax refund arising from pre-petition income qualified as "projected disposable income."

**Id.** at 481. Judge Lundin's Chapter 13 Treatise suggests that whether tax refunds are necessarily included in projected disposable income is an somewhat of an open question in the Sixth Circuit. **KEITH M. LUNDIN and WILLIAM H. BROWN, Chapter 13 Bankruptcy, 4th Ed., § 164.1 , at ¶ 49-53, Sec. Rev. June 11, 2004 www.Ch13online.com.**

In this case, the debtors did not include future tax refunds, and it appears under **Freeman** that, when such is the case, the court should "examine" whether the tax refunds qualify as "projected disposable income." **Freeman** also instructs that "disposable income is to be interpreted broadly in the Sixth Circuit. **Id**. at 480. The only testimony relative to the tax refunds by Mr. Barbutes was that the refunds were not dedicated to the plan, and in the past the debtors had received refunds. Mr. Barbutes testified that the debtors "tried not to owe" at tax time. There was no proof that future refunds were needed for the "maintenance or support" of the debtors. There was no testimony at all about the expected use of the tax refunds, if any. Given **Freeman's** directive to interpret disposable income broadly on this

16-U.S. Bankruptcy Court, M.D. Tenn.

particular issue, the court finds that the future tax refunds, if any, are disposable income and should be dedicated as such.

## CONCLUSIONS

The court finds that the trustee's objections pursuant to 11 U.S.C. § 1325(b) are sustained in part and overruled in part as more specifically provided hereinabove. The court instructs the trustee to prepare an order within seven (7) days of entry of this Memorandum not inconsistent with this court's findings. The order shall give the debtors fourteen (14) days from entry of the order to amend their plan to be consistent with this courts' ruling. If an amended plan is not submitted, the debtors' chapter 13 case will be dismissed upon a notice submitted by the trustee.